564 So.2d 1239 (1990)
STATE of Florida, Appellant,
v.
Ron R. PRICE, Appellee.
No. 89-928.
District Court of Appeal of Florida, Fifth District.
August 2, 1990.
*1240 Robert A. Butterworth, Atty. Gen., Tallahassee, Dee R. Ball and Judy Taylor Rush, Asst. Attys. Gen., Daytona Beach, for appellant.
Robert R. Berry, Merritt Island, for appellee.
DAUKSCH, Judge.
This is an appeal from an order granting a motion to suppress evidence. We reverse.
In October 1988, Agent Paul Chalko met with a confidential informant who advised him that 553 Roosevelt Avenue, Merritt Island, in Brevard County was the scene of numerous narcotics transactions involving crack cocaine. The informant stated all of the transactions involved appellee and his brother, Robert Price. Under the supervision of Chalko, the informant participated in a controlled buy of crack cocaine from Robert Price on October 4, 1988 at that residence. After the buy, the informant turned over the cocaine purchase plus two small pieces of crack, which Chalko recognized as a bonus, a common practice in drug trafficking.
Chalko also met another confidential informant who subsequently contacted one Lee Foster on October 14, 1988. The informant and Foster made two telephone calls and appellee arrived at the Star Motel in Cocoa, Florida approximately forty-five minutes later. The second informant made a controlled buy from appellee and advised Chalko he observed a nine-millimeter automatic weapon in appellee's car.
Prior to seeking a warrant, Chalko made a utility inquiry and learned that 553 Roosevelt Avenue was occupied by appellee. Chalko learned through confidential sources that Robert Price also resided at the location. Chalko knew that Robert Price had seventeen prior arrests, including carrying concealed weapons and battery on a law enforcement officer. Based upon the information and his experience as a law enforcement officer, Chalko sought a nighttime no-knock warrant. The warrant was issued on October 20, 1988 and executed the following evening.
Chalko, other members of the special investigations division, and Brevard County Tactical Control arrived at the scene to execute the warrant. A man Chalko had arrested in the past was present at the scene and Chalko testified at the suppression hearing "people in the area around started screaming 911." Two deputies covered the back bathroom of the residence, to prevent the destruction of evidence. These agents saw the bathroom screen pushed out and one agent was hit by a small canister of cocaine thrown out the window by appellee. Other officers made entry through the front door. Once inside the *1241 residence, Chalko read the search warrant to appellee and left it with him.
The state charged appellee with sale of cocaine and two counts of possession of cocaine. Appellee filed a motion to suppress, alleging, inter alia, no probable cause and no authority for a no-knock warrant. After an evidentiary hearing, the trial court found that the officers acted in good faith on the warrant, but that there was insufficient justification for a no-knock warrant. The trial court granted the motion to suppress and we reverse the trial court.
The warrant was supported by sufficient probable cause for its issuance. A magistrate's determination should be accorded a presumption of correctness and not disturbed absent a clear demonstration that the issuing magistrate abused his discretion. State v. Jacobs, 437 So.2d 166 (Fla. 5th DCA 1983). The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Jacobs.
Moreover, there were sufficient exigent circumstances at the time Chalko and others were on the scene to justify a knock and announce exception. It is not necessary to comply with the knock and announce statute[1] when to do so would increase the officer's peril or when there is a likelihood of the destruction of evidence. Benefield v. State, 160 So.2d 706 (Fla. 1964).
We first note that in State v. Perkins, 558 So.2d 537 (Fla. 3d DCA 1990) our sister court observed
Numerous cases attest to the propensity for violence inherent in narcotics trafficking. See e.g. State v. Sayers, 459 So.2d 352, 353 (Fla. 3d DCA 1984) (In a drug "transaction prospectively involving a large quantity of narcotics and large sums of money [a participant] is likely to be armed to protect the drugs, the money or himself."), review denied sub nom. Zzie v. State, 471 So.2d 44 (Fla. 1985); State v. Amaro, 436 So.2d 1056, 1061 (Fla. 2d DCA 1983) ("Recent history has shown that the potential for violence in a drug related felony, particularly in Florida, is high and cannot be discounted."); Martinez v. State, 413 So.2d 429 (Fla. 3d DCA 1982) (robbery and kidnapping foreseeable consequences of a conspiracy to participate in a large drug transaction).
558 So.2d at 538. In the instant case, the officers knew appellee had been in possession of an automatic weapon. They also knew appellee's brother, who also resided at the location, had been arrested seventeen times within the previous four years and that some of these arrests involved carrying concealed weapons and battery on a law enforcement officer. Also, screams of "911," slang for "police," were heard at the scene. From this information, we conclude any experienced and prudent narcotics officer would have reasonably concluded that he would be subject to increased peril if he complied with the knock and announce requirement. The state established a reasonable basis to fear that a gun would be used.
We next note that in Armenteros v. State, 554 So.2d 574 (Fla. 3d DCA 1989), our sister court observed that
[C]ocaine, when purchased in "user" quantities, is not found in barrels, bushels or bales. Experience tells police officers that cocaine is marketed to the consumer trade in quantities which are readily disposable in sinks or toilets. Experience also teaches that attempts are made to destroy evidence in a great majority of drug-related arrests.
554 So.2d at 575. In the instant case, Chalko stated he had supervised a controlled *1242 buy of a quantity of crack cocaine and that the informant received as a bonus two small pieces of crack. Chalko also knew that appellee resided at 553 Roosevelt Avenue, which was the scene of numerous similar narcotics transactions involving crack cocaine. Chalko was familiar with the appearance, packaging, and distribution of cocaine. From the screams of "911," individuals inside the dwelling knew officers were on the scene. From this testimony at the suppression hearing, we conclude that the likelihood of destruction of evidence was established by the state and, thus, that an exception to the knock and announce statute applied.
The trial judge's determination that the issuing magistrate could not justify a no-knock exception in advance is not determinative in this case because a no-knock exception is always a factual question for the officers at the scene. In other states which have addressed this issue, the overwhelming consensus has been that the issuing magistrate cannot waive the knock and announce requirement in advance and that it is a determination which the executing officer must make at the scene and be prepared to justify later  as did Officer Chalko. See, e.g., State v. Lien, 265 N.W.2d 833 (Minn. 1978); State v. Eminowicz, 21 Ariz. App. 417, 520 P.2d 330 (1974) and Parsley v. Superior Court, 9 Cal.3d 934, 109 Cal. Rptr. 563, 513 P.2d 611 (1973). Even states which have specific statutory authority allowing no-knock warrants require the serving police agency to make an on-site determination of exigent circumstances justifying the need for a no-knock entry. See, e.g., Commonwealth v. Scalise, 387 Mass. 413, 439 N.E.2d 818 (1982).
We reverse the order of suppression and remand this matter for further proceedings.
REVERSED AND REMANDED.
COBB and PETERSON, JJ., concur.
NOTES
[1] The "knock and announce" rule, embodied in section 933.09, Florida Statutes (1989) provides:

933.09 Officer may break open door, etc., to execute warrant.  The officer may break open any outer door, inner door or window of a house or any part of a house or anything therein, to execute the warrant, if after due notice of his authority and purpose he is refused admittance to said house or access to anything therein.