ORFINGER, Judge.
The state appeals from an order suppressing the firearm found in defendant’s pickup truck, the presence of which was the basis for the charge against defendant of carrying a concealed weapon. We reverse.
On September 18, 1984 at about 1:00 A.M., Officer Bingham of the City of Cas-selberry Police Department was on routine patrol in that city. As Bingham drove into the parking lot of the ABC Lounge, two employees of the lounge who were known to the officer pointed at a white Toyota pickup truck which was leaving the parking lot and yelled at the officer to stop the truck because the driver had a gun. Bing-ham testified that at this point in time he did not know exactly what had happened: “For all I knew, he could have just shot somebody or shot the gun, anything.”
Bingham, who was alone in the squad car, then stopped the truck and ordered the single occupant to exit the vehicle. Bing-ham testified that for his own protection he then frisked the driver but found no weapons. By this time the two employees had walked up to where the truck had stopped and told Bingham that the driver had a gun and had been waving it around. It is uncontested that at this point the defendant told Bingham that the gun was under the front seat of the truck. Bingham looked under the seat and seized the firearm, a .38 caliber revolver, lying loose under the seat, not encased in a holster. Defendant was then placed under arrest for carrying a concealed firearm.
The defendant agrees that if the initial stop was valid, the officer was justified in looking under the seat of the pickup truck after defendant told him that the gun was there. He vigorously contends, however, that the stop was invalid, and so we look to the validity of that stop.
Section 901.151, Florida Statutes (1983), says in pertinent part:
(1) This section may be known and cited as the “Florida Stop and Frisk Law.”
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
This statute codifies the principles in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under Terry, in order to justify a stop, a police officer must point to specific and articulable facts, which, taken together with rational inferences from these facts, reasonably justify a stop. State v. Webb, 398 So.2d 820 (Fla.1981). As this court indicated in State v. Hunt, 391 So.2d 760 (Fla. 5th DCA 1980):
*287 Pursuant to section 901.151, Florida Statutes (1979), and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may initiate a stop of a person based upon a founded suspicion. A founded suspicion is something less than probable cause, but something more than a mere suspicion. It is a reasonable suspicion that requires further investigation. Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976); State v. Othen, 300 So.2d 732 (Fla. 2d DCA 1974). It is a suspicion which has some factual foundation in the surrounding circumstances observed by the officer, when those situations are interpreted in light of the officer’s knowledge. State v. Spurting, 385 So.2d 672 (Fla. 2d DCA 1980); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
Id. at 761.
The trial court, in granting defendant’s motion, said that there was no showing that the officer had any founded suspicion that defendant had committed or was committing a felony, but the statute is not that restrictive. Section 901.151 refers to “a violation of the criminal laws of this state ...” and that would include misdemeanors as well as felonies. See Redfin v. State, 453 So.2d 425 (Fla. 5th DCA 1984); Kelly v. State, 407 So.2d 1011 (Fla. 5th DCA 1981).
The officer testified that he knew both employees and knew them to be reliable. He also testified that the lounge was a known trouble-spot, frequently requiring the presence of police. Considering the location, that it was 1:00 o’clock in the morning and that the employees yelled at him to stop that man because he had a gun, pointing to the pickup truck which was in the process of pulling out of the parking lot, the facts and the rational inferences arising from the totality of the circumstances were such as to arouse a reasonable suspicion in the mind of an experienced police officer that further investigation was required. The officer did the only thing he could do under the circumstances when he stopped the vehicle. Therefore, the stop was valid under the statute. Because the officer had reason to believe that the defendant was armed, the frisk for weapons was also justified. Webb, supra.
The order suppressing the firearm is reversed and the cause is remanded for further proceedings.
REVERSED and REMANDED.
COBB, C.J., and UPCHURCH, J., concur.