BARFIELD, Judge.
Renaldo Alexander appeals his conviction for possession of cocaine, arguing that the trial court should have granted his pretrial motion to suppress the crack cocaine seized from his person on the ground that there was insufficient basis to stop and frisk him. We reverse.
At the hearing on the motion, Officer Johnson testified that while on routine patrol, he stopped to talk to a confidential informant with whom he had worked eight to ten times and from whom he usually received reliable information. The informant pointed towards a car[1] in front of Johnson and told him that he had seen a large amount of cocaine in it. Johnson was asked if the informant told him when he *541 had seen the cocaine, to which he replied: “I guess within the last hour or a few minutes to me arriving in that area. I didn’t go into any long questions because I didn’t want to lose the vehicle.” Johnson was satisfied the informant knew and could identify cocaine.
Based solely on the informant’s tip, Johnson stopped the car. When other officers arrived, he conducted a pat-down search of Alexander, the driver. He explained at the hearing that he intended to detain the driver and passenger in his patrol car while he searched the vehicle, and that he performed the weapons search for his own safety as standard procedure. When asked about the procedure to determine whether to search the vehicle, Johnson stated:
Well, I could have looked for probable cause on the outside of the vehicle, I could have called the canine unit, and have the canine unit come around, which I eventually did.
In the area of Alexander’s crotch, Johnson felt a hard cylindrical object, two to three inches long and one half to an inch in diameter. He testified that he had seen other people bearing knives and razor blades in their crotches. Alexander did not respond when Johnson asked him what the object was, whereupon Johnson told him, “You can either take it out or I will take it out.” Alexander undid the side of his shorts, Johnson shook him, and a plastic bag containing ninety pieces of crack cocaine fell out of his pants leg.
On cross-examination, Johnson testified that the informant did not give him a description of the occupants, but merely pointed to the car, and that he did not wait to get details of where the cocaine was in the car, or when the informant had seen the cocaine. He testified that he assumed the informant had just seen the cocaine. He admitted that he had no other information except the informant’s tip, that he did not see any contraband or weapons in plain view when he stopped the car, and that he knew the object in Alexander’s crotch was not a gun or razor blade, but he was not sure if it was a knife.
The judge found that the informant was credible and his information reliable, so that the tip provided reasonable suspicion to justify a stop of the vehicle, and that the officer had “probable cause to believe that defendant may have been armed and dangerous” because he was engaged in a drug transaction involving a large quantity of narcotics and a large sum of money, justifying the pat-down search.
Appellant contends that the informant’s tip was insufficient to establish reasonable suspicion to stop his vehicle, because it was insufficiently detailed and was not corroborated. He argues that even if the stop was valid, the evidence failed to establish probable cause to believe that he was armed with a dangerous weapon, and that the seizure of the cocaine exceeded the permissible scope of a pat-down search.
The state argues that the stop was justified by a reasonable suspicion to believe Alexander was committing a felony based on the informant’s tip, citing State v. Cook, 475 So.2d 285 (Fla. 5th DCA 1985), in which an officer was flagged down by bar employees known to the officer to be reliable, who pointed to a departing vehicle and yelled at the officer to stop the driver because he had a gun. It contends that the cocaine was discovered pursuant to a valid frisk for weapons, and that it was reasonable to conduct a frisk under the circumstances. It asserts that the cocaine would have been discovered even without the pat-down search, since Johnson testified that the drug-sniffing dog was eventually brought to the scene.
Alexander replies that it is unclear from the testimony when the informant saw the cocaine, how he knew there was cocaine in the vehicle, and whether the cocaine was still in the car. He argues that following standard procedures is not sufficient to justify a pat-down search, citing Harris v. State, 574 So.2d 243 (Fla. 1st DCA 1991), and L.D.P. v. State, 551 So.2d 1257 (Fla. 1st DCA 1989).
Assuming that the informant’s tip, that he had seen a large amount of cocaine in the car driven by Alexander, provided reasonable suspicion that a crime was being *542 committed, thereby justifying a stop of the vehicle, neither the facts nor the law supports the remainder of the trial court’s finding, that the pat-down search was justified because the informant’s tip gave the officer “probable cause to believe that defendant may have been armed and dangerous” because he was engaged in a drug transaction involving a large quantity of narcotics and a large sum of money.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court stated that the Fourth Amendment test for the “reasonableness” of police actions requires a balancing of the need to search or seize against the invasion which the search or seizure entails. To justify a particular intrusion, police “must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion,” an objective standard. Id. at 20-21, 88 S.Ct. at 1879-80. The Court identified the government interest in “effective crime prevention and detection” justifying temporary detentions for investigatory purposes, and “the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him,” observing:
[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.
[[Image here]]
Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or “hunch,” but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
Id. at 24-27, 88 S.Ct. at 1881-83 (cites omitted).
In Terry, the actions of the suspects were consistent with the police officer’s hypothesis that they “were contemplating a daylight robbery — which, it is reasonable to assume, would be likely to involve the use of weapons — and nothing in their conduct from the time he first noticed them until the time he confronted them and identified himself as a police officer gave him sufficient reason to negate that hypothesis.” Id. at 28, 88 S.Ct. at 1883. The Court found that on the facts presented, “a reasonably prudent man would have been warranted in believing petitioner was armed and thus presented a threat to the officer’s safety while he was investigating his suspicious activity.” Id.
While we acknowledge that there are situations in which the nature of the suspected criminal activity justifying a Terry stop may also provide a basis for a reasonable belief “that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer,”[2] we do not find that the Terry requirement of reasonableness is met by the sole fact that the person detained is suspected of dealing in a large quantity of *543 drugs and large sums of money, notwithstanding the implications that may be read from the dicta in State v. Sayers, 459 So.2d 352 (Fla. 3d DCA 1984), rev. den., Zzie v. State, 471 So.2d 44 (Fla.1985).[3] But even if the standard used by the trial judge in this case were proper, there was no evidence presented that Johnson believed Alexander was armed, or that he suspected him of more than simple possession of cocaine. As noted by Alexander, we have consistently held that “standard police procedures” will not alone justify a pat-down search for weapons. Having found that the pat-down search of Alexander’s person was unlawful because it was not supported by Officer Johnson’s reasonable belief that Alexander was armed and presented a threat to his safety, we need not reach the question of whether the seizure of the cocaine exceeded the permissible scope of a pat-down search.
REVERSED and REMANDED with directions to discharge the appellant.
ZEHMER, J., concurs.
MINER, J., dissents, with opinion.

. There were no other cars in sight at the time.

. See State v. Webb, 398 So.2d 820 (Fla.1981).

. We do not find the federal cases cited in Sayers contrary to our position.